## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| W. C. CHAPMAN, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No.  4:21-cv-893 |
| | § | |
| JOHN CAVAZOS, | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, W. C. Chapman, L.P. acting by and through its General Partner, Chapman Red River Ranch, Inc., complaining of John Cavazos and in support thereof would respectfully show the Court as follows:

### I.
### PARTIES

1.      The entity Plaintiff is a Oklahoma limited partnership with its principal office in Ardmore, Carter County, Oklahoma, which is authorized to do business in the State of Texas.  The entity Plaintiff is the owner of real property located in Red River County, Texas.

2.      Defendant is an individual resident of the State of Texas and may be served with process at 6716 Sierra Madre, Fort Worth, Texas.

### II.
### JURISDICTION

3.      This Court has jurisdiction over this suit under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendant are citizens of different U.S. states, and the amount in controversy exceeds

$75,000.00, excluding interest and costs.

### III.
### VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391((b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district or a substantial part of the property that is the subject of the action in situated in this district.

### IV.
### FACTS

5.      Plaintiff, and/or its predecessors in title or interest, acquired real property out of the J.J. Ward Survey, Abst. 883 and the Issac Tyler Survey, Abst. 825, located in Red River County, Texas (the "Land") beginning approximately one hundred (100) years ago.

6.      The exact boundary of the Land has changed with the change of the river course of the Red River; however, the survey of Edwards Surveying, LLC, dated March, 2017, attached hereto and incorporated herein as Exhibit "A," establishes that the river course has changed and through accretion or avulsion has added approximately 753.51 acres, more or less, to the Land owned by the Plaintiff and its predecessors in title or interest for more than the maximum period necessary to establish limitation title.  That acquisition by accretion or avulsion occurred between approximately seventy-five (75) years ago and sixty (60) years ago.

7.      On or about March 29, 2021, Defendant allegedly acquired a Special Warranty Deed from SWYFT, Inc. an Illinois corporation, (the "SWYFT Deed") to real property described as Section 28, Township 9S, Range 24E, to include the "North Half of the Southeast Quarter of the Northeast Quarter" allegedly lying in McCurtain County, Oklahoma, comprising twenty (20) acres, more or less (the "Claimed Land").  Defendant now allegedly asserts that the SWYFT Deed provides

him with title to the Claimed Land but it does not.

8.     The title underlying the alleged SWYFT Deed is an alleged Warranty Deed from Sally A. Gunn dated December 17, 2020 (the "Gunn Deed").  For the reasons set forth below the Gunn Deed conveyed no title to SWYFT.

9.     Gunn acquired a Quit Claim Deed to the Claimed Land from Ed Weil on July 14, 1997 (the "Weil Deed").  For the reasons set forth below the Weil Deed conveyed no title to Gunn.

10.     At the time of the Weil Deed, the alleged Gunn Deed and the alleged SWYFT Deed, the Claimed Land was located exclusively in the State of Texas and was not in McCurtain County, Oklahoma.

11.     In 1999, the States of Texas and Oklahoma agreed to the adoption of the Red River Boundary Compact (the "Compact").  The Compact appears in Section 12.001 *et. seq.,* Tex. Nat. Res. Code.  The Compact states in Article II(b) that "The permanent boundary line between the states of Texas and Oklahoma along the Red River is the vegetation line along the South bank of the Red River except for the Texoma area, where the boundary does not change."  Article II(b)(1-2) states "(1) the Texoma area extends from the east bank of Shawnee Creek (which flows into the Red River from the south approximately one-half mile below the Denison Dam) at its mouth to the upper end of the normal pool elevation of Lake Texoma (which is 617 feet); and (2) the upper end of the normal pool elevation of Lake Texoma is along the latitude of 33 degrees 54 minutes as it crosses the watercourse at the approximate location of longitude 96 degrees 59 minutes."  Thus, the Claimed Land in not located in the "Texoma area" since it lies East of Lake Texoma.  Additionally, Article II(g) states "Should there be a change in the watercourse of the Red River, the party states recognize the rules of accretion, erosion, and avulsion.  The states agree that accretion or erosion may cause

a change in the boundary between the states if it was a change in the vegetation line. **With regard to avulsion, the states agree that a change in the course of the Red River caused by an immediately perceivable natural event that changes the vegetation line will change the location of the boundary between the states."** (Emphasis ours). Article III states "**On the effective date of this compact, the party states agree that the State of Oklahoma possesses sovereignty over all lands north of the boundary line established by this compact and that the State of Texas possesses sovereignty over all lands south of the boundary line established by this compact."** (Emphasis ours). The compact went into effect on August 31, 2000, when both the United States Senate and the House of Representatives approved the Red River Boundary Compact as Joint Resolution 72. Clearly, from and after the effective date of the Compact, the Claimed Land was located solely within the State of Texas since the Claimed Land lies South of the boundary line established by the compact.

12.    In June 1999, the Oklahoma Legislature adopted Title 74, Chapter 81, Section 6106, Oklahoma Statutes. The statute is entitled "Red River Boundary Compact." Article II, Establishment of Boundary, states in Section G that "Should there be a change in the watercourse of the Red River, the party states recognize the rules of accretion, erosion, and avulsion. The states agree that accretion or erosion may cause a change in the boundary between the states if it causes a change in the vegetation line. **With regard to avulsion, the states agree that a change in the course of the Red River caused by an immediately perceivable natural event that changes the vegetation line will change the location of the boundary between the states**." (Emphasis ours). Both states have adopted identical language. As a result, the Oklahoma and Texas Legislatures have now both acquiesced that a change in the river course cause by avulsion changes the boundary

between the States.

13.    By 1999, the date of adoption by both states of the Compact, the Claimed Land was located South of the boundary line established by the Compact, it was within the confines of the Land, it had been in the Plaintiff's possession for at least sixty (60) years, and it had been fenced and used for cattle grazing for between seventy-five (75) years and sixty (60) years.

14.    Plaintiff has rendered the Land, including the Claimed Land, for ad valorem taxes in Red River County and has paid all ad valorem taxes due for at least the prior five (5) year period. Further, Plaintiff has exercised exclusive dominion and control over the Land and the attached improvements for approximately seventy-five (75) years.

15.    The presumption of title arises from possession, and the doctrine of prior possession is based on the theory that one in possession should not be disturbed except by one having a better title. Here, the Plaintiff's possession of the Land, including the Claimed Land, and the attached improvements has been exclusive and continuous and neither Defendant nor his predecessors in title have ever possessed or otherwise occupied the Land, including the Claimed Land.

## COUNT 1, LIMITATIONS TITLE

16.    The Plaintiff first entered the Land, including the Claimed Land, when it accreted into Texas based on changes to the river course of the Red River or, alternatively, was relocated into Texas by avulsion.  That accretion or avulsion occurred between 1941 and 1961.  Since being deposited into the State of Texas, Plaintiff has held the Land in peaceable and adverse possession from that date until the present date.  This peaceable and adverse possession has thus continued for more than three years, so that the Plaintiff now owns full title under Texas Civil Practice and Remedies Code Sections 16.024 and 16.030.

17.     Alternatively, since its accretion or avulsion into the State of Texas, which occurred between 1941 and 1961, Plaintiff has held the Land, including the Claimed Land, in peaceable and adverse possession from that date until the present date. Plaintiff has rendered the Land for taxation in Red River County and has paid the assessed ad valorem taxes.  This peaceable and adverse possession has thus continued for more than 25 years. Additionally, during this time the Plaintiff has fenced, used, and enjoyed the property for cattle grazing and other agricultural uses. Thus, the Plaintiff now owns full title under Texas Civil Practice and Remedies Code Sections 16.027 and 16.030, notwithstanding any legal disabilities of the Defendant.

18.     Through the term of its use, occupancy and exclusive possession and control over the Land, Plaintiff has used the Land, including the Claimed Land for grazing livestock and other purposes.  The Land has been continuously fenced.

19.     On or about June 2, 2021, Defendant John Cavazos caused a demand letter, attached hereto as Exhibit "B", to be sent to the underlying counsel demanding that access be provided by the Plaintiff to the Defendant to the Claimed Land (the "Threat Letter").  At the time of this demand, Plaintiff was in actual possession of the Claimed Land.  Based on the statements in the Threat Letter. the Defendant has or will attempt to dispossess the Plaintiff of the Claimed Land.

20.     On September 3, 2021, Plaintiff gave the Defendant, by certified mail, written notice and demand to cease any attempt to occupy the Claimed Land (the "Notice").  This Notice was given more than 10 days before the Plaintiff filed this suit.  In the written Notice, the Plaintiff notified the Defendants that, in the event the Defendant had not abandoned any claims to the Claimed Land within 10 days, and if the Plaintiff filed a claim against the Defendant, judgment might be entered against the Defendant for attorney's fees and costs of suit in whatever reasonable amount the court

determines. A true and correct copy of the Notice is attached hereto and incorporated herein as

Exhibit "C."  The Defendant is therefore liable to the Plaintiff for the sum of at least $10,000.00 as

reasonable and necessary attorney's fees.

## COUNT 2, SUIT TO QUIET TITLE

21.    At all times material to this dispute, Defendant had actual knowledge that the Claimed

Land was physically located within the boundaries of the State of Texas.  Additionally, Defendant

had actual knowledge that the Claimed Land was being claimed and occupied by Plaintiff and has

been so claimed for between 75 and 60 years.  Based on the adoption of the Compact by the State

of Oklahoma and the State of Texas, Defendant had actual or constructive notice of its terms.  When

Defendant acquired the alleged SWYFT Deed, such acquisition was not done in good faith.

22.    Defendant's claim to the Claimed Land is invalid since it is premised on a Quit Claim

Deed in the chain of title.  Under Oklahoma law, a Quit Claim Deed:

> ...conveys only such interest and title as the grantor owned at the time
> of the execution of the deed, and does not convey a subsequently
> acquired title and conveys only such interest in the property as the
> grantor actually owns, if any, and grantor thereby does not covenant
> to convey perfect title.

See *Perme v. S. Cherokee Nation of Oklahoma,* 2011 OK 40, ¶ 8, 253 P.3d 1290, 1292 (OK
2011)(citing *Atkinson v. Barr*, 1967 OK 103, ¶ 22, 428 P.2d 316 (OK 1967)).

In Texas, "Quitclaim deeds are commonly used to convey "interests of an unknown extent or claims

having a dubious basis.  A quitclaim deed conveys upon its face doubts about the grantor's interest;

any buyer is necessarily put on inquiry as to those doubts."  *Geodyne Energy Income Prod. P'ship

I-E v. Newton Corp.*, 161 S.W.3d 482, 485 (Tex. 2005)(citing *Porter v. Wilson*, 389 S.W.2d 650, 654

(Tex. 1965) and *Richardson v. Levi*, 67 Tex. 359, 3 S.W. 444, 447-48 (Tex. 1887)).  A quitclaim

deed does not establish title in the person holding the deed, but merely passes whatever right, title,

or interest the grantor has in the property.  *Rogers v. Ricane Enters., Inc.*, 884 S.W. 2d 763, 769 (Tex. 1994).

23.     Defendants' claim of title to the Claimed Land is a cloud on the Plaintiff's title to the Land, include the Claimed Land.

24.     As a matter of law, that Plaintiff has a right of ownership to the Claimed Land and Defendant's adverse claim is a cloud on that title that equity should remove.

25.     Plaintiff requests that the Court judicially declare that Defendant's claim to the Claimed Land is unfounded and that title has been and remains solely in the name of the Plaintiff.

26.     Plaintiff further requests that the Court award Plaintiff its reasonable and necessary attorneys' fees through trial and all appeals which the Court determines are equitable and just.

27.     Defendants' claim of title to the Claimed Land while having actual knowledge of the fact that the Claimed Land was not and had not been in McCurtain County, Oklahoma for at least seventy-five (75) years; that the quit claim set forth in the Weil Deed could not and did not establish any title in Defendant or his immediate predecessors in title; that the Claimed Land lies exclusively within the boundaries of the State of Texas; and that Plaintiff has owned, used, fenced, and otherwise possessed the Land, including the Claimed Land,  for between seventy-five (75) years and sixty (60) years demonstrates the Defendant, acting with malice, intended  to cause substantial injury or harm to Plaintiff.  As a result, Plaintiff is entitled to receive exemplary damages from Defendant.  In this connection, Plaintiff alleges that Defendant is liable to Plaintiff for exemplary damages in an amount of at least two times the amount of Plaintiff's actual economic damages plus $200,000.00 together with maximum allowable prejudgment interest.  Plaintiff further alleges that the total of Plaintiff's attorneys' fees, court costs, and expert witness fees and the conduct and net worth of Defendant

should be taken into consideration in calculating the exemplary damages in an amount to be assessed in this case.

## COUNT 3, INJUNCTIVE RELIEF

28.     The Defendant has threatened and, unless restrained, will attempt to seize possession and control of the Claimed Land.  That threat was specifically set out in the Threat Letter.  The Plaintiff will suffer irreparable injury unless the Defendant's threatened actions are restrained and enjoined. Plaintiff will show that there is no remedy at law that is clear and adequate to protect the Plaintiff's property interest against this wrongful action by Defendant.  Plaintiff requests injunctive relief so that justice may be done, not merely for delay.

29.     To preserve the status quo and the property and rights of Plaintiff during the pendency of this action, Plaintiff respectfully requests that the Court issue a temporary injunction enjoining Defendant and his agents, servants, and employees, and representatives and anyone acting in concert with him from (a) entering upon or attempting to enter upon the Claimed Land; (b) trespassing on any portion of the Plaintiff's Land; (c) taking any action, directly or indirectly, to dispossess Plaintiff from its ownership, use and occupancy of the Claimed Land; and (d) taking and action, directly or indirectly, further cloud the Plaintiff's title to the Claimed Land or any adjacent or adjoining Land.

30.     For the reasons stated in this pleading, the Plaintiff requests that, after trial, this Court permanently enjoin the Defendant and their his servants, and employees, and representatives and anyone acting in concert with them from (a) entering upon the Land or attempting to enter upon the Claimed Land; (b) trespassing on Plaintiff's Land; (c) taking any action, directly or indirectly, to dispossess Plaintiff from its ownership, use and occupancy of the Land; and (d) taking and action, directly or indirectly, further cloud the Plaintiff's title to the Claimed Land or any adjacent or

adjoining Land.

31.    Plaintiff is willing to post a bond.

## JURY DEMAND

32.    Plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff requests that the Defendant be cited to appear and answer, and that on final trial, the Plaintiff have:

a.    Judgment for the title and possession of the Claimed Land that is the subject of this suit;

b.    Judgment removing the cloud on Plaintiff's title to the Claimed Land for the reasons set forth above;

c.    The Defendant be cited to appear and show cause, and that on hearing, a temporary injunction and, after final trial, a permanent injunction be issued enjoining Defendants, their agents, servants, employees and representatives and anyone acting in concert with them, from (a) entering upon the Land, including the Claimed Land; (b) trespassing on Plaintiff's Land, including the Claimed Land; (c) taking any action, directly or indirectly, to dispossess Plaintiff from its ownership, use and occupancy of the Land, including the Claimed Land; and (d) taking and action, directly or indirectly, further cloud the Plaintiff's title to the Claimed Land or any adjacent or adjoining Land;

d.    Plaintiff recover its actual damages from Defendant;

e.    Reasonable and necessary attorney's fees through trial and all appeals which the Court determines are equitable and just;

f.      Plaintiff recover exemplary damages from Defendant;

g.      Plaintiff recover all costs of suit;

h.      Plaintiff recover both pre and post judgment interest at the highest rate allowed by

        law; and

i.      Plaintiff be awarded other and further relief to which it may show itself to may be

        justly entitled, both at law or in equity.

                                        Respectfully submitted,

                                        **ABERNATHY, ROEDER, BOYD & HULLETT,
                                        P.C.**

                                        By: /s/ Richard M. Abernathy
                                        _____
                                                **Richard M. Abernathy**
                                                State Bar No. 00809500
                                                **Larry R. Boyd**
                                                State Bar No. 02775000
                                                **Charles J. Crawford**
                                                State Bar No.  05018900
                                                1700 Redbud Blvd., Ste. 300
                                                McKinney, Texas 75069
                                                (214) 544-4000 Telephone
                                                (214) 544-4040 Facsimile
                                                rabernathy@abernathy-law.com
                                                lboyd@abernathy-law.com
                                                ccrawford@abernathy-law.com

                                        **ATTORNEYS FOR PLAINTIFF**

ORIGINAL COMPLAINT - Page 11

## VERIFICATION

STATE OF OKLAHOMA                              §
                                               §
COUNTY OF CARTER                               §

     Before me, the undersigned Notary Public, on this day  personally appeared EDWARD SCOTT CHAPMAN, who, after being duly sworn, stated under oath that he is the President of Chapman Red River Ranch, Inc., the General Partner of Plaintiff in this action; that he has read the above petition; that he is authorized to make this verification and apply for injunctive relief and that every statement contained in Paragraphs 5 through 15 and Paragraphs 28 through 31 of the Complaint is within his personal knowledge, except where stated to be on information and belief in which case it is made on that basis, and is true and correct.

_____
Edward Scott Chapman

     SUBSCRIBED AND SWORN TO BEFORE ME on the 8th day of November, 2021, to certify which witness my hand and official seal.

OFFICIAL SEAL
SANDRA L. VAUGHT
NOTARY PUBLIC OKLAHOMA
CARTER COUNTY
COMM. NO. 12008854 EXP. 9/19/24

_____
Notary Public for the State of Oklahoma

ORIGINAL COMPLAINT - Page 12