# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| W. C. CHAPMAN, L.P., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  4:21-cv-00893-ALM |
| | § | Judge Mazzant |
| JOHN CAVAZOS, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (Dkt. #6).  Having considered the motion and relevant pleadings, the Court finds the motion should be **DENIED.**

## BACKGROUND

This is a property dispute over the ownership of approximately twenty acres located near the Red River along the Texas-Oklahoma border ("the Disputed Property") (Dkt. #1).  Plaintiff W.C. Chapman, L.P. is an Oklahoma limited partnership that claims ownership of the Disputed Property (Dkt. #1).  On November 9, 2021, Plaintiff filed suit requesting (1) judgment for the title and possession of the Disputed Property; (2) judgment removing the cloud on Plaintiff's title to the Disputed Property; and (3) that Defendant be enjoined for entering the Disputed Property and from taking any action dispossessing Plaintiff from its ownership and occupancy of the Disputed Property (Dkt. #1 at p. 10).  Defendant John Cavazos, who is self-represented, is a Texas resident who also claims to own the Disputed Property.

Not only is ownership of the Disputed Property contested, but  the location of the Disputed Property is also heavily disputed.  Indeed, the location of the Disputed Property is the subject of

the present motion.  On December 3, 2021, Defendant filed the present motion, requesting that the Court transfer this action under 28 U.S.C. § 1404(a) to the Eastern District of Oklahoma (Dkt. #6). Defendant alleges the Disputed Property is located in McCurtain County, Oklahoma, which is within the Eastern District of Oklahoma (Dkt. #6 at p. 3).  In support of its motion for change of venue, Defendant also requested that the Court take judicial notice of four exhibits: 1) the Special Warranty Deed for the Disputed Property (the "Deed"); 2) the Notice of Removal filed in No. 6:21-cv-00320-SPS[1]; 3) the relevant portion of the Local Civil Rules for the Eastern District of Oklahoma; and 4) Plaintiff's Notice of Voluntary Dismissal in No. 6:21-cv-00320 (Dkt. #7).  On December 17, 2021, Plaintiff filed its response, contending that a survey and field notes conducted by Edwards Surveying, LLC (the "Edwards Survey and Field Notes") show the Disputed Property is located in Texas (Dkt. #8).  In support of its response, Plaintiff submitted a copy of the Edwards Survey and Field Notes along with a copy of the Red River Compact and a Declaration from Edward Scott Chapman ("Chapman"), the General Partner of W.C. Chapman, L.P. (Dkt. #8, Exhibits 1–3).

On December 29, 2021, Defendant filed his reply (Dkt. #9).  Along with his reply, Defendant submitted evidentiary objections to Chapman's Declaration (Dkt. #10).  On January 6, 2022, Plaintiff filed its sur-reply and objections to Defendant's evidence, including a Declaration from William David "Davey" Edwards ("Edwards"), Vice President of Edwards Surveying, LLC (Dkt. #11).  On January 10, 2022, Defendant filed an objection to Plaintiff's sur-reply and a request for judicial notice of a tax receipt (the "Tax Receipt") issued by the McCurtain County Treasurer

---

[1] Before filing suit in this Court, Plaintiff filed suit against Defendant in Red River, County, Texas under Cause No. CV-05157 (the "Texas State Court Case").  On October 22, 2021, Defendant removed the Texas State Court case to the United States District Court for the Eastern District of Oklahoma. The case was then assigned Case No. 6:21-cv-00320.  Defendant did not file an answer (Dkt. #8 at p. 2).  On November 5, 2021, Plaintiff filed a Notice of Voluntary Dismissal pursuant to Rule 41 in the Eastern District of Oklahoma (Dkt. #8 at p. 2).  Plaintiff then filed its Complaint in this Court.

for the Disputed Property (Dkt #12; Dkt. #13).  On January 12, Plaintiff responded to Defendant's objection and request for judicial notice (Dkt. #14).

## LEGAL STANDARD

### I.  Subject Matter Jurisdiction

Federal courts are "duty bound to examine the basis of subject matter jurisdiction sua sponte" and to dismiss the action if they determine at any time that they lack subject matter jurisdiction. *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008); FED. R. CIV. P. 12(h)(3).  The party invoking federal jurisdiction has the burden of establishing it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When a movant provides evidence factually attacking subject matter jurisdiction, the party attempting to invoke jurisdiction must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  Thus, when faced with a factual challenge to jurisdiction over the subject matter, the court may move beyond the allegations of the complaint and consider relevant evidence—including affidavits and testimony. *Id.*

### II.  Motion to Transfer Venue

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public

3

against unnecessary inconvenience and expense . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

## ANALYSIS

Defendant argues that this case should be transferred pursuant to 28 U.S.C. § 1404(a) because the Disputed Property is located in McCurtain County, Oklahoma (Dkt. #6 at p. 3).  In response, Plaintiff contends that the Disputed Property is in Texas, and, thus, the Eastern District of Oklahoma is not a proper place of venue (Dkt. #8 at p. 13).  Consequently, the heart of the parties' dispute for this motion is the location of the Disputed Property.  Nevertheless, though the parties frame their dispute as one over venue, the location of the Disputed Property affects whether this Court has subject matter jurisdiction.

### I.    Subject Matter Jurisdiction

The Court has an obligation to examine the basis for subject matter jurisdiction even if no party contests the issue.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006).  Subject matter jurisdiction exists only when a "federal question" is presented, 28 USC § 1331, or when there is "diversity of citizenship" and the amount in controversy exceeds $75,000.00, 28 U.S.C. § 1332.  Here, Plaintiff alleges the Court has jurisdiction under 28 U.S.C. § 1332(a) because the parties are

4

diverse and the amount in controversy exceeds $75,000 (Dkt. #1).  As Plaintiff is a limited partnership, its citizenship is determined by considering the citizenship of all the members and partners. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  Pursuant to this Court's Order (Dkt. #15), Plaintiff identified the members of its limited partnership and stated that its members are all citizens of Ardmore, Carter County, Oklahoma (Dkt. #16).  Further, in its Complaint, Plaintiff alleges that Defendant is a citizen of Texas, and the amount in controversy exceeds $75,000 (Dkt. #1).  Thus, at a first glance, it appears subject matter jurisdiction exists because there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000. *See Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

However, because the parties dispute whether the Disputed Property is located in Oklahoma or Texas, there is a question of whether the local action doctrine deprives this Court of jurisdiction.  Indeed, the Fifth Circuit has recently re-affirmed that "[e]ven where the requirements of diversity jurisdiction are met, the subject matter jurisdiction of the federal courts is limited by the local action doctrine." *Boaz Legacy, L.P. v. Roberts*, 628 Fed. App'x 318, 319 (5th Cir. 2016) (per curiam) (unpub.); *see also Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987).

### A.  Local Action Doctrine

Under the local action doctrine, "a local action involving real property can only be brought within the territorial boundaries of the state where the land is located." *Hayes*, 821 F.2d at 287.  Consequently, "courts lack jurisdiction over the subject matter of claims to land located outside the state in which the court sits." *Hayes*, 821 F.2d at 287.  Thus, here, if the Disputed Property is located in Oklahoma, then the local action doctrine deprives this Court of jurisdiction.  To be sure, again, though the parties' dispute is framed as a venue problem, the location of the Disputed Property actually affects whether this Court has subject matter jurisdiction. *Boaz*, 628 Fed. App'x

5

at 319; *see also Spann v. Select Portfolio Servicing, Inc*., No. 3:17-CV-299, 2017 WL 3279365, at *2 (N.D. Tex. July 11, 2017) (noting the Fifth Circuit recently reaffirmed that the local action doctrine limits federal courts' subject matter jurisdiction) (citing *Boaz*, 628 Fed. App'x at 319).[2]

Notably, the Fifth Circuit has held that "the law of the forum state—not federal law— determines whether the local action doctrine applies." *Trust Co. Bank v. U.S. Gypsum Co*., 950 F.2d 1144, 1149 (5th Cir. 1992) (internal quotations omitted) (applying Mississippi state law where suit was brought in Mississippi and property was located in Georgia). Accordingly, "Texas law governs the way the local action doctrine applies to subject matter jurisdiction in federal courts located in Texas, even though federal law usually determines questions of venue and jurisdiction of federal courts." *Keller v. Millice*, 838 F. Supp. 1163, 1171 (S.D. Tex. 1993). "Under Texas law, actions that seek adjudication of title to real property are local in nature and must be brought where the land is situated." *Bailey v. Shell W. E&P, Inc*., 609 F.3d 710, 721 (5th Cir. 2010). By contrast, Texas courts have held that the local action doctrine "does not govern 'where title to land was involved only incidentally or secondarily involved. . . .'"*Box v. Ameritrust Tex., N.A*., 810 F. Supp. 776, 779 (E.D. Tex. 1992) (*citing Stiba v. Bowers*, 756 S.W.2d 835, 839 (Tex. App.—Corpus Christi 1988, no writ)).

Here, the Complaint's allegations put adjudication of title of the Disputed Property at the heart of the lawsuit. Simply put, the central dispute is the ownership of the Disputed Property. Indeed, Plaintiff requests judgment for the title and possession of the Disputed Property and seeks

---

[2] In 2012, Congress amended the general venue statute to eliminate the use of the local action doctrine in venue decisions. *See* 28 U.S.C. § 1391(a)(2); *see also Sims v. Riverland Prop., LLC*, No. 16-CV-0550, 2016 WL 3976416, at *1 (W.D. La. May 4, 2016). The statute now provides that "the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature." 28 U.S.C. § 1391(a)(2). Thus, Congress abolished the local action doctrine to the extent that it is solely an issue of venue. However, courts have found that the amendment does not impact the application of the local action doctrine as a matter of subject matter jurisdiction. *Eldee-K Rental Props., LLC v. DIRECTV, Inc*., 748 F.3d 943, 949 (9th Cir. 2014) ("Venue and subject matter jurisdiction are distinct concepts, and Congress's rejection of the local action doctrine in the venue context does not overrule the Supreme Court's prior determination that the local action doctrine is jurisdictional").

to remove the cloud from its title (Dkt. #1 at p. 10).  As a result, the local action doctrine applies.  *See Keller*, 838 F. Supp. at 1173 (finding that under Texas law suits to try title or to remove a cloud are local actions); *Bailey*, 609 F.3d at 721 (noting that under Texas law actions that seek adjudication of title to real property are local in nature).  Accordingly, pursuant to the local action doctrine, this Court will only have subject matter jurisdiction if the Disputed Property is located in Texas.  Stated differently, if the Disputed Property is located in Oklahoma, the local action doctrine will operate to defeat subject matter jurisdiction in this Court.

To determine whether this Court has subject matter jurisdiction, the Court turns to determine whether the Disputed Property is located in Texas.  However, because both parties have included numerous objections to the evidence submitted by the opposing party, the Court addresses these objections first.

### B.  Evidentiary Objections

#### 1.  Defendant's Objections to Plaintiff's Evidence

In support of its contention that the Disputed Property is located in Texas, Plaintiff submits the Edwards Survey and Field Notes along with two Declarations, one from Edwards, the Vice-President of Edwards Surveying, LLC, and one from Chapman, the General Partner of W.C. Chapman, L.P.—all of which Defendant objects to.  The Court will address each in turn.

##### a.  Edwards Survey, Field Notes, and Edwards Declaration

Defendant objects to the Edwards Survey and Field Notes on the grounds that they constitute inadmissible hearsay, lacks any foundation to be authenticated, and are improper expert testimony (Dkt. #10 at p. 5).  Beyond these general objections, Defendant offers no argument as to why he believes the Edwards Survey and Field Notes are not properly authenticated, lack foundation, or are otherwise inadmissible.  Nor does he cite any case law on the matter or further

explanation on the matter.  Yet, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)).   Other district courts in the Fifth Circuit have overruled general objections such as these because they were not specific enough to pass muster under Federal Rule of Evidence 103(a)(1)(B). *See, e.g., Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398, 2016 WL 4479511, at *8 (N.D. Tex. Aug. 25, 2016) (overruling objection that that the "testimony constitutes inadmissible hearsay and violates the best evidence rule" because objections did not meet the specificity requirements of Rule 103(a)(1)).

Nevertheless, Plaintiff's submission of the Edwards Declaration remedies any alleged evidentiary defects because the Declaration authenticates the Survey and Field Notes and provides an exception to the hearsay rule.  Indeed, "[a]uthentication is not an onerous requirement." *Campos v. Steves & Sons, Inc*., 10 F.4th 515, 522 (5th Cir. 2021). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a).  Here, the Edwards Survey was created by Edwards Surveying LLC (Dkt. #11, Exhibit A).  Edwards, the Vice-President of Edwards Surveying, LLC, declared that Exhibits A and B are true and correct copies of the Survey and Field Notes (Dkt. #11, Exhibit A).  Thus, the Court finds that Plaintiff has sufficiently presented evidence authenticating the Edwards Survey and Field Notes through the Declaration of Edwards.

Further, though Defendant argues the Survey and Field Notes are hearsay, Plaintiff responds that they fall under the business record exception for records of regularly conducted

activity.  The Court agrees. *See United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir. 1996) (holding that the business records exception is a "firmly rooted" hearsay exception).  Under Federal Rule of Evidence 803(6)(B), the business records exception to the hearsay rule provides for the admission of a "record [that] was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit[.]" Fed. R. Evid. 803(6)(B).  Here, Edwards states that he is the custodian of records of Edwards Surveying, LLC, and then declares that the records were prepared as a matter of business routine.  Thus, the Survey and Field Notes are admissible under the business records exception to the hearsay rule.

As a last-ditch effort, Defendant argues that the Edwards Declaration and the exhibits attached thereto constitute the testimony of an undesignated expert and thus violate Federal Rule of Civil Procedure 26(2) (Dkt. #12).  Again, Defendant cites no law or any further explanation in support of its objection.  However, the Court finds this argument also lacks merit. Under Rule 26(a)(C), a party must generally make its initial disclosures within 14 days after the parties' Rule 26(f) conference.  However, Plaintiff alleges that the Rule 26(f) Conference has not yet occurred because Defendant has not answered Plaintiff's Complaint (Dkt. #14 at p. 2).  Thus, the Court finds that Plaintiff has not violated Rule 26(2) by not yet designating Edwards. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) ("Parties are not generally expected to disclose expert opinions before discovery commences.").

In sum, the Court overrules Defendant's objections to the Edwards Survey and Field Notes and Edwards' Declaration.  The Court now turns to Defendant's objections to the Chapman Declaration.

**b.  Chapman Declaration**

Defendant also objects to the Chapman Declaration, arguing that it lacks foundation, constitutes improper expert testimony, comprises inadmissible hearsay, violates the Best Evidence Rule, assumes facts not in evidence, and misstates evidence (Dkt. #10).  Here, again, Defendant fails to explain the basis for his objections.  (Dkt. #10 at pp. 2–4).  Further, after reviewing the Chapman Declaration, the Court finds Defendant's arguments unconvincing.

Here, Chapman states that he is the President of Chapman Red River Ranch, Inc. and that the statements in the Declaration are based on his personal knowledge (Dkt. #8, Exhibit 3 ¶ 1). After reviewing the Declaration, the Court finds that it contains enough factual support to demonstrate Chapman's personal knowledge.  Indeed, a declarant's personal knowledge over matters that reasonably fall within his or her sphere of responsibility can be inferred. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2000) (affiant's position within a corporation permitted him to testify from personal knowledge about the corporation's policies in his area of responsibility).  Here, as the President of Chapman Red River Ranch, Inc., Chapman has knowledge on the boundaries of the Plaintiff's land and what activities Plaintiff performs on the land—such as paying taxes.  Although Defendant mounts a broad attack on Chapman's Declaration, he has provided "nothing approaching a 'legitimate fear' that his testimony is somehow untrue or unreliable." *United States v. Herndon*, No. C-11-318, 2012 WL 4718622, at *5 (S.D. Tex. Aug. 8, 2012).  Nevertheless, to the extent that the Declaration contains conclusory allegations and legal conclusions, those statements will not be considered. *See Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). Any portions of the Declarations that are clearly

hearsay, clearly lack a basis of personal knowledge, or both, will also be disregarded. *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012).

## 2. Defendant's Requests for Judicial Notice and Plaintiff's Objections to These Requests

Defendant asks the Court to take judicial notice of several exhibits, only two of which the Court finds relevant for this motion—the Deed and Tax Receipt.  As such, the Court considers only these requests and Plaintiff's objections to them.

"The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it." *United States v. Berrojo*, 628 F.2d 368, 369 (5th Cir. 1980).  Federal Rule of Evidence 201 provides that a court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Fifth Circuit has held that judicial notice may be taken of "[s]pecific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." *Turner v. Lt. Driver*, 848 F.3d 687, 692 n.63 (5th Cir. 2017) (quoting *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962)).  The Fifth Circuit characterizes the standard for judicial notice as applying only "to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." *Hardy v. Johns-Mansville Sales Corp.*, 681 F.2d 334, 347 (5th Cir. 1982).

### a. The Deed

Here, Defendant requests that the Court take judicial notice of the Deed, which Plaintiff objects to.  It is well-settled that courts may take judicial notice of matters of public record. *Sanders v. Univ. of Tex. Pan Am.*, 776 Fed. App'x 835, 837 (5th Cir. 2019).  Here, the Deed is a public

record since it was filed in the real property records of McCurtain County, Oklahoma and recorded. *See Kovalchuk v. Wilmington Sav. Fund Soc'y, FSB*, No. 4:20-CV-186, 2021 WL 1015950, at *3 (E.D. Tex. Mar. 16, 2021) (finding filed deed to be a public record); *DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co., N.A.*, 958 F. Supp. 2d 738, 744 (W.D. 2013) (taking judicial notice of deed because it was recorded). Thus, the Court takes judicial notice of the Deed. *See Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 213 (N.D. Tex. 2020) (taking judicial notice of Substitute Trustee's Deed, Deed of Trust, Assignment of Note and Deed of Trust, Release of Lien, and Quitclaim Deed because they are matters of public record).  However, this is limited to the judicial notice that the Deed was recorded in McCurtain County, Oklahoma.

Further, that the Court takes judicial notice of the Deed does not prove that the Disputed Property is actually located in Oklahoma—which is presumably why the Plaintiff requests that the Court take judicial notice of this document at this time. *See Lovelace v. Software Spectrum Inc*., 78 F.3d 1015, 1018 (5th Cir. 1996) ("Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."); *see Julius v. Luxury Inn & Suites, LLC*, 535 F. Supp. 3d. 600, 607 (S.D. Miss. 2021) (taking judicial notice of weather records, but declining to take judicial notice of anything that could be inferred from the weather records).  Indeed, a court cannot take judicial notice of any fact that may be in dispute. *See Hennessy v. Penril Datacomm Networks, Inc*., 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."); *see also S. Farm Bureau Life Ins. Co. v. Lusk*, No. 4:13-CV-847, 2014 WL 897812, at *8 (S.D. Tex. Mar. 6, 2014) (declining to take judicial notice of contested factual issues).  And the parties clearly dispute the location of the Disputed Property.

### b.  Tax Receipt

Defendant also asks the Court to take judicial notice of the Tax Receipt, which Plaintiff objects to.  Yet Defendant makes no effort to show how the Tax Receipt concerns facts that are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201(b)(1)–(2).  Further, the Tax Receipt does not fall within the first category because the Tax Receipt covers activities in McCurtain County, Oklahoma—outside this Court's territorial jurisdiction—and does not concern "generally known" facts. *See United States v. Health Mgmt. Sys., Inc*., No. 3:19-CV-0920, 2022 WL 976161, at \*16 (N.D. Tex. Mar. 31, 2022) (noting public report and email from Tennessee official could not fall under the first category because it covered activities outside of court's jurisdiction and concerned the internal administration of a program, not a "generally known" fact).  Additionally, the Tax Receipt does not fall into the second category because it is not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Arrowhead Cap. Fin., Ltd. v. Royal Alice Props., LLC*, 619 B.R. 839, 854 (Bankr. E.D. La. 2020) (declining to take judicial notice of tax documents).  Thus, the Court declines to take judicial notice of the Tax Receipt.

With these preliminary evidentiary maters resolved, the Court now turns to the heart of the dispute—the location of the Disputed Property for purposes of this Court's subject matter jurisdiction.

### C.  Whether the Disputed Property is Located in Texas or Oklahoma

Before diving into the parties' arguments, the Court takes this opportunity to reaffirm the narrow question before the Court—whether the Disputed Property is located in Texas or

Oklahoma.   Again, the issue is not the ownership of the Disputed Property.   Thus, the determination today is limited to the location of the Disputed Property.

Plaintiff alleges that the Disputed Property has been located in Texas since at least 1941 (Dkt. #8 at p. 2).   To begin, Plaintiff argues the Red River Boundary Compact (the "Compact") establishes that the vegetation line along the South bank of the Red River is the boundary line between Oklahoma and Texas (Dkt. #8 at pp. 5–6).   As such, Plaintiff alleges the Disputed Property is located in Texas because it lies south of the boundary line established by the Compact (Dkt. #8 at p. 6).   In support of its contention that the Disputed Property is located south of the boundary line, Plaintiff submits the Edwards Survey and Field Notes along with the Chapman Declaration and Edwards Declaration.   In their Declarations, Edwards and Chapman each state that the Disputed Property is located south of the Red River's south vegetation line (Dkt. #8, Exhibit 3 ¶ 5; Dkt. #11, Exhibit A ¶ 3).   Additionally, Plaintiff alleges the Edwards Survey and Field Notes show that the boundary of Plaintiff's land, which encompasses the Disputed Property, is located south of the Red River's south vegetation line (Dkt. #8 at pp. 2–3).

On the other hand, Defendant alleges the Disputed Property is located in McCurtain County, Oklahoma, contending that the Deed and Tax Receipt "prove" this (Dkt. #9; Dkt. #13). According to Defendant, the "[D]eed was accepted [and recorded] by the McCurtain County Clerk in Oklahoma and thus creates the presumption (which Plaintiff has not rebutted), that the [Disputed] Property is in fact located in McCurtain County, Oklahoma" (Dkt. #9 at p. 3). Additionally, Defendant alleges that the Tax Bill issued by the McCurtain County for the Disputed Property also "dispositively proves" that the Disputed Property is located in McCurtain County, Oklahoma (Dkt. #13).   In response to Plaintiff's argument that the Compact establishes the boundary line between Texas and Oklahoma, Defendant argues that the Compact is not relevant

14

because it in no way affects private property rights (Dkt. #9 at p. 4).  Thus, the parties dispute two main issues: 1) whether the Compact applies, and 2) which party's evidence establishes the location of the Disputed Property.  The Court turns to the first dispute, whether the Compact applies.

### 1.  Whether the Compact Applies

Texas and Oklahoma entered into the Red River Boundary Compact in 1999, which was approved by the United States Congress in 2000.  Under the Compact, "[t]he permanent political boundary line between the states of Texas and Oklahoma along the Red River is the vegetation line along the south bank of the Red River. . . ." TEX NAT. RES. CODE ANN. § 12.002, Art. II(b).[3] Thus, the plain terms of the Compact establishes the border between the two states.   Nevertheless, Defendant argues the Compact does not apply because it does not affect private property rights or title to property (Dkt. #9 at p. 4) However, the Court finds this argument unconvincing for two main reasons.  First, the Fifth Circuit has rejected this argument in a similar case, finding that the Compact establishes the relevant boundary line between Oklahoma and Texas in determining the state in which land is located for jurisdictional purposes.  *Boaz*, 628 Fed. App'x at 320 ("The Compact establishes the relevant boundary line . . . .").  Second, Defendant's argument conflates two distinct concepts: (i) who owns the Disputed Land, the underlying dispute; and (ii) in which state the Disputed Property is located, the present determination. *Id*.  Indeed, "[t]he state in which the Disputed Property is located does not change depending upon which private party properly owns title to the Disputed Property." *Boaz Legacy, LP v. Roberts*, No. 7:15-CV-00041, 2015 WL 12731721, at *2 (N.D. Tex. Mar. 31, 2015).  Thus, the Court finds that the Compact's definition

---

[3] The Compact contains an exception to this general rule for "the Texoma area, where the boundary does not change." *Id*.  However, there is no contention by either party that the land is located in the "Texoma area."  Thus, the exception does not apply here.

of the relevant boundary line controls this jurisdictional question.  With this issue resolved, the Court turns to evaluate the evidence the parties submitted to determine the location of the Disputed Property and apply the terms of the Compact.  As the Compact is controlling, whether the Disputed Property is located north or south of the Red River's south vegetation line is the dispositive question for purposes of this motion.

### 2. Plaintiff and Defendant's Evidence on the Location of the Disputed Property

Plaintiff's Complaint alleges jurisdiction is proper because the parties are diverse and the amount in controversy exceeds $75,000, and the Disputed Property is in Texas (Dkt. 1). Though framing his arguments as improper venue arguments, Defendant submitted evidentiary material in his briefing—namely, the Deed and Tax Receipt—supporting his position that jurisdiction in this Court would be improper.  Thus, because Defendant submitted evidentiary materials supporting his position, Defendant's jurisdictional attack is a factual attack. *See Patterson*, 644 F.2d at 523. Accordingly, as the party attempting to invoke this Court's jurisdiction, Plaintiff must submit evidence and prove by a preponderance of the evidence that the court has jurisdiction—here, that the Disputed Property is located in Texas. *See id.*  As noted, Plaintiff submitted the Edwards Survey and Field Notes and two Declarations to support its position that the Disputed Property is in Texas.

After reviewing the evidence, the Court finds that Plaintiff has met its burden of establishing that the Disputed Property is in Texas, and, thus, that this Court has jurisdiction.  The Court finds the district court's analysis in *Boaz* to be instructive, a case the Fifth Circuit affirmed. *Boaz*, 2015 WL 12731721, at *1–*3, *aff'd*, 628 Fed. App'x at 319.  In *Boaz*, the district court faced an almost identical issue to the one presented here—determining whether disputed property was located in Texas or Oklahoma for purposes of the court's subject matter jurisdiction. *Id.* at *1.

16

After determining that the Compact's definition of the Texas-Oklahoma boundary controlled the dispute, the court turned to examine the parties' evidence. *Id.* at *2.  Though the plaintiff had submitted a map as evidence that the land was located in Texas, the district court found the map was not sufficient to carry its burden because plaintiff had submitted no evidence regarding the south vegetation line—which the Compact establishes as the border. *Id*.  The court then relied significantly on a declaration from the defendant, the prevailing party, that attested the disputed property was located north of the vegetation line. *Id*.  The court found it noteworthy that the plaintiff, the non-prevailing party, presented no evidence challenging defendant's declaration. *Id.* Accordingly, because the plaintiff did not present any evidence that the disputed property lay south of the vegetation line and failed to refute the defendant's declaration, the district court ultimately determined that the plaintiff had failed to carry its burden of showing that the disputed property was in Texas. *Id*.

Here, like the prevailing party in *Boaz*, Plaintiff has submitted evidence, namely the Edwards Survey and Field Notes and the Chapman and Edwards Declarations, that the Disputed Property lies south of this vegetation line, and, thus, under the Compact, is located in Texas.  By contrast, like the non-prevailing party in *Boaz*, here, Defendant has submitted no evidence regarding the south vegetation line.  Further, like the non-prevailing party in *Boaz,* Defendant has failed to present evidence challenging the Edwards and Chapman Declarations, which state that the property is located south of the vegetation line.  Though Defendant in this case offers more evidence than the non-prevailing party in *Boaz*, the evidence suffers from the same flaw—it does not speak to whether the Disputed Property is located north or south of the Red River vegetation line.  Indeed, like the map submitted by the non-prevailing party in *Boaz*, the Special Warranty

Deed and Tax Receipt submitted by the Defendant here provide no clarity on where the Disputed Property is located in relation to the Red River's south vegetation line.

Put simply, Plaintiff's evidence regarding the location of the Disputed Property is more compelling than Defendant's evidence.  Again, as the Compact is controlling, whether the Disputed Property is located north or south of the Red River's south vegetation line is the dispositive question for purposes of this motion.  Here, both Edwards and Chapman declare that based on their personal knowledge, the Disputed Property is located south of the Red River's south vegetation line.  Further, in support of his Declaration, Chapman attaches an aerial photograph depicting the Disputed Property and the vegetation line.  Even more so, the Edwards Survey and Field Notes also indicate that the Disputed Property is south of the Red River's south vegetation line.  Thus, Plaintiff's evidence persuasively expounds on the dispositive issue—it directly answers the question of whether the Disputed Property is located south of the Red River's south vegetation line.

By contrast, neither the Deed nor the Tax Receipt prove any detail regarding the Disputed Property's location in relation to the south vegetation line. Further, though Defendant argues that the Deed was recorded in McCurtain County, Oklahoma "proves" that the Disputed Property is located in Oklahoma, (Dkt. #9 at p. 4), the Court disagrees.  Of course, the Court might infer that the property is located in Oklahoma because the Deed was recorded there.  But it is also true that deeds can be recorded in the wrong county. *See Disanti v. Wachovia Bank, N.A.*, No. 2-08-330-CV, 2009 WL 1372970 (Tex. App.—Fort Worth May 14, 2009, pet. denied) (case concerning deed that was filed in the wrong county).  Thus, without more, the fact that the Deed was recorded in McCurtain County, Oklahoma does not necessarily establish that the Disputed Property is located in Oklahoma.  As Plaintiff puts well, "[T]he location of recordation of an instrument is not

determinative of the ultimate issue of the actual location of the [Disputed Property]. In essence, Defendant . . . is requesting that the Court imply the location from the place of recordation of the deed" (Dkt. #11 at p. 3).

Similarly, regarding the Tax Receipt, though it shows that taxes were paid on the land by the Defendant, it also does not necessarily prove the location of the Disputed Property.  Again, though the Court might infer that the Disputed Property is located in Oklahoma because taxes were assessed by an Oklahoma county, it is also true that the taxes might not have been properly assessed.  Indeed, Plaintiff argues that it has paid taxes on the Disputed Property too (Dkt. #8). Chapman's Declaration states that "Plaintiff has rendered the Land, including the [Disputed Property], for ad valorem taxes in Red River County, Texas and has paid all ad valorem taxes due for at least the prior five (5) year period" (Dkt. #8, Exhibit 3 § 6).  Thus, especially because both Plaintiff and Defendant state they have paid taxes on the land, the payment of taxes, by itself, does not prove the location of the Disputed Property.

In sum, the Court finds the Compact controlling and that Plaintiff's evidence on the location of the Disputed Property more compelling.  Plaintiff's evidence goes to the heart of the dispositive question presented by the Compact—it directly demonstrates that the Disputed Property is located south of the Red River's south vegetation line, and, thus, in Texas.  By contrast, though Defendant's evidence is relevant, it does not as persuasively shed light on the dispositive question—whether the Disputed Property is north or south of the vegetation line.  Thus, the Court finds that Plaintiff has met its burden to show that the Disputed Property is in Texas by a preponderance of the evidence.  Accordingly, this Court has subject matter jurisdiction over this matter pursuant to the local action doctrine.

Having determined that the Court has subject matter jurisdiction to hear this case, the Court

19

now turns to the parties' dispute over whether transfer of venue is proper under 28 U.S.C. § 1404(a).

### II. Section 1404(a) Motion to Transfer

Defendant requests the Court transfer this case to the Eastern District of Oklahoma under § 1404(a) (Dkt. #6).

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This section "is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29 (quoting *Van Dusen*, 376 U.S. at 622).  The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *Volkswagen I.*, 371 F.3d at 203.  Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.* The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* A court also gives some weight to the plaintiff's choice of forum. *Atl. Marine*, 571 U.S. at 62, n.6.

### A. Whether the Eastern District of Oklahoma Would Have Been a Proper Venue

As mentioned, the threshold inquiry under § 1404(a) is whether the suit could originally have been filed in the destination venue, here, the Eastern District of Oklahoma. *Volkswagen I.*, 371 F.3d at 203. This requires the Court to conduct a proper venue analysis under § 1391(b). According to § 1391(b), venue is proper in a diversity action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).[4] The movant, here, Defendant, bears the burden of establishing that venue is proper in the transferee forum. *See Chirife v. St. Jude Med., Inc.,* No. 6:08-CV-480, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009).[5]

---

[4] As noted, in 2012, Congress amended the general venue statute to eliminate the use of the local action doctrine in venue decisions. *See* 28 U.S.C. § 1391(a)(2).

[5] Whether a case "could have been filed" in the transferor venue also requires a defendant to prove personal jurisdiction in the transferor court. *Id.* Here, the parties do not dispute that the Eastern District of Oklahoma could exercise personal jurisdiction over Plaintiff.

Here, though Defendant does not mention § 1391(b) in his motion to transfer, he argues that the Disputed Property is located in the Eastern District of Oklahoma, and, as such, venue is proper there.   Thus, Defendant bases his contention that venue is proper in Oklahoma on § 1391(b)(2).   Conversely, Plaintiff argues that venue is not proper in the Eastern District of Oklahoma under § 1391(b)(2) since the Disputed Property has been located in Texas for 60 years (Dkt. #8 at p. 8).   Accordingly, the parties' dispute over whether the Eastern District of Oklahoma is a proper venue hinges on the location of the Disputed Property.   Nevertheless, the Court has already determined that Plaintiff has met its burden of establishing that the Disputed Property is in Texas.   As such, venue would not be proper in the Eastern District of Oklahoma on the basis that the district is where "a substantial part of [the] property that is the subject of the action is situated." *See* 28 U.S.C. § 1391(b)(2).

However, under § 1391(b)(2), venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.*   Plaintiff offers no argument concerning whether a substantial part of the events giving rise to the claim may have occurred in the Eastern District of Oklahoma despite the Disputed Property not being located in Oklahoma.   Indeed, Defendant argues that because the Disputed Property is in McCurtain County, Oklahoma, "[t]his dispositively establishes the fact that venue must be transferred to this Court" (Dkt. #9 at p. 5).   Thus, Defendant's argument that venue is proper in the Eastern District of Oklahoma is based solely on his contention that the Disputed Property is located there. Nevertheless, Defendant submitted the Deed of the Disputed Property, reflecting that it was recorded in McCurtain County, Oklahoma, and a Tax Receipt, which shows that the McCurtain County Treasurer assessed taxes on the Disputed Property.   Thus, it may be argued that because the Deed to the Disputed Property was recorded in the Eastern District of Oklahoma and taxes on

the property were assessed by an entity in the Eastern District of Oklahoma, a substantial part of the events giving rise to the lawsuit occurred in the Eastern District of Oklahoma.  However, Defendant failed to argue this point, and he has the burden of establishing venue is proper in the transferee forum. *See Chirife*, 2009 WL 1684563, at *1.

Nevertheless, even assuming *arguendo* that the matter could have been originally brought in the Eastern District of Oklahoma, the Court also finds transfer is not warranted for "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  As the movant, Defendant bears the burden of demonstrating that the transfer of this suit to its proposed venue is clearly more convenient under applicable law and jurisprudence. *Volkswagen II*, 545 F.3d at 315.  But Defendant has failed to meet this burden.  In fact, as discussed below, he has failed to show that even one factor supports transfer.

### B.  Private Factors

#### 1.  Relative Ease of Access to Sources of Proof

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Diem LLC v. BigCommerce, Inc*., No. 6:17-CV-00186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).  Here, Defendant fails to identify any documentary evidence or the location of any relevant documents.  Nor does Defendant argue that his potential evidentiary documents are so voluminous as to make transport to Texas inconvenient.  On the other hand, Plaintiff generally states that the documents relating to the Disputed Property are located in the Eastern District of Texas (Dkt. #8 at p. 10).  Here, because neither party adequately identified the location of relevant documents with enough detail, the Court does not weigh this factor in its convenience analysis. *U.S. Ethernet Innovations, LLC v. Konica Minolta Bus. Sols. Inc*., No. 6:12-CV-329 MHS-JDL, 2013 WL 12139091, at *3 (E.D. Tex. Mar.

28, 2013) (finding that the failure to adequately identify the location of relevant documents precluded the Court from weighing this factor in its convenience analysis); *see also Invitrogen v. Gen. Elec. Co*., No. 6:08-CV-113, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

### 2. The Availability of the Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor "instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Diem*, 2017 WL 6729907, at *4.  The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter*., No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc*., No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).  Here, Defendant only makes a vague assertion about the witnesses that may be called and where they live—adjoining landowners in McCurtain County, Oklahoma (Dkt. #9 p. 7).  Indeed, he does not identify any specific witnesses or where they reside.  But this insufficient. *Faulhaber v. Equifax Info. Serv., LLC*, No. 4:21-CV-140, 2021 WL 5140791, at *4 (E.D. Tex. Nov. 4, 2021).  As such, this factor is, at best, neutral.

### 3. Cost of Attendance for Willing Witnesses

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen* I, 371 F.3d at 204.  However, in considering the availability and convenience of witnesses, a court must

24

concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co*., 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002).  Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis. *Id*.  Here, Defendant states that he "will be calling witnesses in the form of adjoining landowners, all of whom are located within McCurtain County, Oklahoma" (Dkt. #9 at p. 7).  Conversely, Plaintiff states that its witnesses include Ranch employees who reside in Red River County, Texas and unrelated persons who have hunting rights on Plaintiff's property who reside in East Texas (Dkt. #8 at p. 10).  Thus, neither party identifies any witness by name or identifies what information the witness may provide.  Although, the Court ordinarily directs its inquiry into (1) who the most relevant witnesses are, and (2) where they reside, the Court is unable to assess the relevance and materiality of any witnesses because the witnesses remain unidentified. *See E-Sys. Design, Inc. v. Mentor Graphics Corp*., No. 4:17-CV-00682, 2018 WL 2463795, at *3 (E.D. Tex. June 1, 2018).  Thus, this factor is neutral.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

The fourth factor serves as a catchall for concerns that may weigh for or against transfer, focusing on judicial economy. *Adaptix, Inc. v. HTC Corp*., 937 F. Supp. 2d 867, 876 (E.D. Tex. 2013).  Defendant makes no argument on this factor.  Plaintiff states that "[t]here are no factors which could justify an easy, expeditious, or inexpensive trial in the Eastern District of Oklahoma" and this factor, therefore, weighs against transferring or is neutral (Dkt. #8 at p. 11). The Court agrees and finds this factor is, at best, neutral.

### C. Public Interest Factors

### 1. Administrative Difficulties

The first public interest factor concerns the speedy and efficient administration of justice. In evaluation of this factor, courts are concerned with whether the case will be resolved faster if transferred to the proposed venue. *See Volkswagen II*, 545 F.3d at 316. Here, Defendant makes no argument over this factor. Plaintiff argues that the most recently available federal court management statistics show that court docket congestion is not a significant problem in either district (Dkt. #8 at p. 11). The Court agrees and finds this factor neutral.

### 2. Local Interest in Having Localized Interests Decided at Home

The next public interest factor is the local interest in adjudication of the case. Here, the Disputed Property, ownership of which lies at the heart of the lawsuit, is located in the Eastern District of Texas. Thus, this factor weighs in favor of retaining the case in the Eastern District of Texas. *See Prock v. Woodmont Sherman GP, L.L.C*., No. 2-06-CV-484, 2007 WL 1079940 at *3 (E.D. Tex. Apr. 9, 2007) (finding this factor weighed in favor of transfer where the property at issue was located in the Sherman Division)

### 3. Familiarity of the Forum With Governing Law

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Here, because the Disputed Property is located in Texas, Texas substantive law will govern the legal issues involved with the case. *See United States v. Denby*, 522 F.2d 1358, 1362 (5th Cir. 1975) ("As is customary in suits involving title to realty [for property located in Texas], we look to the substantive law of Texas for aid in resolving this dispute."). As such, the Eastern District of Texas is more familiar with the law that will govern the case, and, thus, better prepared to interpret the controlling law. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). Thus, this factor weighs in favor of keeping the case here.

### 4. Avoidance of Unnecessary Problems of Conflict of Laws or the Application of Foreign Law

Neither party argues that that this case presents any problems with conflict of laws or issues related to applying foreign law. Thus, this factor is neutral. *Smith v. Real Page, Inc.*, No. 4:18-CV-025, 2018 WL 3105758, at *21 (E.D. Tex. 2018).

### D.  Conclusion

After an analysis of the private and public factors, the Court finds that no factor weighs in favor of transfer and the rest all weigh against transfer or are neutral.  Thus, Defendant has not met its burden of proving transfer would be "clearly more convenient." *Volkswagen II*, 545 F.3d at 315.  Indeed, Defendant does not address many of the public and private interest factors.  Because Defendant has not shown that the Eastern District of Oklahoma is clearly more convenient than the Eastern District of Texas, transfer is inappropriate.

**CONCLUSION**

It is therefore **ORDERED** that Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (Dkt. #6) is hereby **DENIED**.

**IT IS SO ORDERED.**
 **SIGNED this 17th day of May, 2022.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE